## ALCID BOWERS, Respondent, v. H. L. WALKER and JOSEPH G. RANGER, Appellants.

**Kansas City Court of Appeals, Nov. 22, 1915.**

1. **MALICIOUS PROSECUTION: Damages: Probable Cause.** The plaintiff, a practicing lawyer, was arrested by the defendants, the holders of a mortgage on his property, because he deeded it without asserting therein a clause that it was subject to their mortgage. The grantee was fully advised of the encumbrance but the defendants so failed to inform the prosecuting attorney, who filed the information. The information was dismissed, and this action instituted. *Held*, that the plaintiff was entitled to recover.

2. ———: ———: ———. When one is arrested by mortgagees for deeding property, without placing therein a clause that it is subject to a deed of trust, but of which the grantee has knowledge, the discharge of the accused makes only a *prima-facie* case for him in an action for malicious prosecution and defendant mortgagees still have the right to claim that they had probable cause.

3. ———: ———: ———. The finding of an indictment by a grand jury against a person charged with a crime is *prima-facie* evidence of probable cause in an action for malicious prosecution, but it is not conclusive and may be rebutted by proof that the indictment was obtained by false or fraudulent or other improper means.

4. **INSTRUCTIONS: Discharge by Justice of Peace.** An instruction is not subject to the criticism that it assumed plaintiff was discharged by the justice of the peace, there being no evidence of the discharge, and it is conceded that the prosecuting attorney dismissed the prosecution, and the justice must have discharged plaintiff from that action.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D. Rusk,* Judge.

AFFIRMED.

*George W. Eastin, K. B. Randolph, Gabbert & Mitchell* for respondent.

*W. H. Haynes, J. N. Walker* and *W. K. Amick* for appellants.

JOHNSON, J.—Action for malicious prosecution. The petition alleges that defendants ''maliciously conspiring together and contriving and intending to injure him in his good name and fame and reputation'' procured the arrest, imprisonment and prosecution of plaintiff without reasonable and probable cause for an alleged violation of section 4569, Revised Statutes 1909, which provides ''every person who shall make, execute or deliver any deed . . . for the conveyance . . . of any lands . . . which he had previously, by deed or writing sold, conveyed, mortgaged or assured . . . to any other person, such first deed being outstanding and in force and shall not in such second deed ., . . recite and describe such former deed . . . with intent to defraud, and any person who shall knowingly take or receive such second deed . . . shall, if the property be of the value of fifty dollars or more, on conviction be adjudged guilty of a felony,'' etc.

The defendants answered separately. The answer of defendant Walker being a general denial and that of Ranger a general denial followed by allegations of probable cause and that the prosecution was begun in good faith on the advice of counsel to whom the facts of the case were fully disclosed. A trial of the issues raised by the pleadings resulted in a verdict for plaintiff in which his compensatory damages were assessed at $5000. After unsuccessfully moving for a new trial and in arrest of judgment, both defendants appealed.

In 1908, plaintiff who is a practicing lawyer in St. Joseph became the owner of certain real estate in that city which he purchased subject to a deed of trust for $900, and to a lien of certain special taxes, and which he further encumbered with a second deed of trust execut-

ed by him and his wife, to secure a loan made to him by Joseph Hoblitzell. On November 10, 1910, plaintiff sold the property thus encumbered to Flora D. Hadley, a married woman, who was represented in the transaction by her husband. The deed from plaintiff to Mrs. Hadley recited that the conveyance was made subject to the liens of the first deed of trust and of the special taxes, but did not mention the second trust deed. Six days after she purchased the property Mrs. Hadley sold and conveyed it to defendant Ranger, subject to the first two liens and in consideration of the payment of $200. Her deed to Ranger did not refer to the second deed of trust, and Ranger claims he did not know of the existence of that lien until some time after the sale, when Hoblitzell threatened to foreclose. Afterward, the trustee for Hoblitzell sold the property under the deed of trust. Plaintiff attended the sale and bid a sufficient sum to cover the encumbrance but someone representing defendants overbid him and became the purchaser. We quote from the testimony of Ranger:

"Q. Were you present at the sale by Pinkston, trustee of this property? A. No, sir. Q. Did you furnish the money at that sale to pay the purchase price of the trustee sale? A. Yes, sir."

Plaintiff testified: "I bid the amount of my obligation and when I bid the amount of my obligation I quit, and then they bid higher than me and they got it." Further he testified that defendant sued him in a justice court to recover the amount still due on the Hoblitzell loan, and that he defended the case and won on the ground that that cause of action did not inure to defendants but to Mrs. Hadley.

Before conveying to Mrs. Hadley, plaintiff delivered to her husband an abstract of title disclosing the fact that a second deed of trust had been executed, acknowledged and recorded, and it appears from the evidence of plaintiff that in the sale of the property

he informed Mr. Hadley of the existence of that lien and agreed to pay the remainder of the loan which it secured. Plaintiff states that in omitting mention of that encumbrance in the deed to Mrs. Hadley, he had no intention to defraud or mislead the grantee, to whose agent he imparted full information respecting the title, and that he acted on the supposition that it was not necessary to mention a lien which the contract of sale required him to discharge.

The evidence is voluminous and we shall not go into its details. More than a year elapsed after the purchase of the property by Ranger before he and Walker applied to the prosecuting attorney for the arrest and prosecution of plaintiff. It appears that Walker had a pecuniary interest in the transaction and that he and Ranger became involved in a series of disputes with plaintiff which finally culminated in their application to the prosecuting attorney for the arrest and prosecution of plaintiff for a violation of the provisions of the statute.

Defendants first consulted an attorney who advised them that plaintiff had violated the statute and, afterwards, they had an interview with one of the assistant prosecuting attorneys to whom they made a statement of the case with the request that plaintiff be prosecuted. They exhibited the deeds from plaintiff to Mrs. Hadley and from her to Ranger, but did not inform the assistant that Mrs. Hadley had accepted the deed from plaintiff with full knowledge of the Hoblitzell lien. The assistant would not proceed as requested without further investigation, and after the interview was closed, he had a conversation with plaintiff who gave his version of the transaction, from which it appeared that the Hadleys (who, in the meantime, had removed to Florida) had purchased the property with knowledge of the Hoblitzell lien, under an agreement that plaintiff would discharge that lien. Defendants saw the assistant prosecutor three or four

times after this and urged him to proceed, but he re-fused on the ground that "if anybody was guilty, it looked like Mrs. Hadley was guilty for not having mentioned the deed of trust." Further it appears from plaintiff's testimony that defendants were in possession of the abstract of title which plaintiff had delivered to Hadley and which showed the Hoblitzell deed of trust.

Finding they could not induce him to act, defendants called upon another assistant of the prosecuting attorney and stated the case to him without apprising him of the knowledge the Hadleys had of the Hoblitzell lien at the time they purchased the property. He concluded from their statement of facts and from an inspection of the documentary evidence they exhibited that a crime had been committed by plaintiff and instituted a criminal prosecution against plaintiff upon the affidavit and complaint of defendant Ranger, in which it was charged that plaintiff "did not in said second and last deed, so made as aforesaid, recite nor describe said former and first-mentioned deed, nor the substance thereof, with intent to defraud the said Flora D. Hadley." Plaintiff was arrested and lodged in jail where he remained half an hour when he was released on bond. On the day set for the preliminary hearing the prosecutor dismissed the proceeding for the reason, as he states: "Because I had made further investigation after it was issued and came to the conclusion that it should not be prosecuted."

Following the dismissal of the case plaintiff brought this suit for the recovery of compensatory damages. At the close of the evidence each defendant requested the court to give a peremptory instruction but these requests were refused and the cause was submitted to the jury.

Among the instructions given at the request of plaintiff were the following: (1) "That if you believe and find from the evidence that the defendants

willfully, maliciously and without probable cause, acting together, did cause the warrant introduced in evidence to be issued out of the justice court of Daniel N. Nies, who was then and there a justice of the peace of Washington Township, Buchanan county, Missouri, and in pursuance of such common purpose, if you believe and find from the evidence that the defendants did act with a common purpose to cause said warrant to be issued, the defendant Joseph G. Ranger, made an affidavit before Daniel N. Nies, the aforementioned justice of the peace, and that pursuant to such common purpose between said defendants, the said defendant Joseph G. Ranger, did maliciously and falsely and without probable cause charge in such affidavit the plaintiff with having fraudulently omitted to mention a certain deed of trust for three hundred dollars to Edward Pinkston, as trustee, with Joseph Hoblitzell as beneficiary named therein, which said deed of trust was of date the 10th day of December, 1908, and which said last mentioned deed was offered in evidence by the defendants, and which said affidavit further charged that said omission was made with the purpose of defrauding one Flora D. Hadley, mentioned in evidence, and that further said defendants acting together with a common purpose did willfully, falsely and maliciously and without probable cause procure and cause thereon the arrest of the plaintiff herein upon said affidavit and complaint, and the warrant issuing upon such affidavit and complaint and did by reason thereof cause plaintiff to be taken by the constable of said Washington Township, Buchanan county, Missouri, before the aforesaid justice of the peace, Daniel N. Nies, and did by reason thereof and as a consequence thereof cause plaintiff to be arrested and deprived of his liberty and committed to the common jail of Buchanan county, Missouri, and therein locked, if you so find from the evidence that he was so deprived of his liberty and locked in said county jail, and that further

and thereafter the plaintiff gave bond for his appearance at such time and times as should be required of him by the said justice of the peace, to be and appear before said justice of the peace in answer to the charge so made against him by said affidavit and complaint and warrant, and that the plaintiff did appear at such time as was required of him by said justice of the peace, and on said date the justice of the peace discharged the plaintiff from and on account of said charge so brought against him, then your verdict will be for the plaintiff.''

(2) "If the jury believe and find from the evidence that one of the defendants acting for himself caused the arrest and prosecution of the plaintiff, then your verdict will be against such defendant alone. If you find, however, that both of the defendants acting with a common purpose caused the arrest and prosecution of the plaintiff, then your verdict should be against both defendants, provided you find that the arrest was malicious and without probable cause as defined in the other instructions.''

(3) "By the term 'Malice' as used in these instructions is not meant mere spite or ill will, but a wrongful act intentionally done without just cause or excuse.''

"By the phrase 'probable cause' as used in these instructions is meant belief in the guilt of the accused based upon circumstances sufficiently strong in themselves to induce such belief in the mind of a reasonable and cautious man.''

Among others, the court gave the following instructions at the request of defendants: (2) "The court instructs the jury that the arrest of the plaintiff, Alcid Bowers, on the charge with the intent to defraud as set out in plaintiff's petition, must have been instituted by the defendants maliciously and without probable cause, and unless you find from a preponderance of the evidence that both malice and want of

probable cause concurred, your verdict should be for the defendants." (3) "The court instructs the jury that the issue in this case is not whether plaintiff was guilty of the charge of conveying property with intent to defraud as alleged in the affidavit made by the defendant, Joseph G. Ranger, for the arrest of Alcid Bowers, but the issue is, did the defendant Ranger, at the time he made and filed the affidavit, have probable cause for believing the said Bowers guilty. And if you believe from all the facts and circumstances given in evidence that the said Ranger had probable cause for believing said Alcid Bowers guilty of the offense charged in said affidavit then you will find for the defendants."

(4) "The court instructs the jury that in law what is meant by the words 'with intent to defraud' does not mean to defraud any particular person but with intent to defraud some person."

(5) "You are instructed that the plaintiff cannot recover in this action unless you shall be satisfied from the evidence not only that there was no probable cause for the prosecution of the plaintiff, but that the defendants in causing his arrest acted with malice; and you are further instructed that if from the testimony you shall find that there was probable cause no malice, however distinctly proven, will make the defendants liable."

First we shall consider the argument of defendants that the court erred in not giving a peremptory instruction to the jury to find in their favor.

To sustain his burden of proof plaintiff was required to show, not only that the transaction of which he complains was without probable cause but also that it was maliciously procured by defendants. "It takes both a lack of probable cause and malice to make out a case. If either be not shown, the case fails. So it is said that, however vile the malice, if there be probable cause, no action can be maintained." [Smith v.

Glynn, 144 S. W. 149; Callahan v. Kelso, 170 Mo. App. 338.] And further it is observed in the case first cited that "proof that there was no probable cause for the prosecution does not establish malice as an inference of law, though malice may be inferred therefrom as a matter of fact."

With these rules in mind we turn to the contention of defendants that the evidence conclusively shows probable cause for the prosecution. The nature of the offense denounced in the pertinent statute thus is defined in Armstrong v. Winfrey, 61 Mo. 356: "The statute (now sec. 4569, Revised Statutes 1909) was obviously intended to prevent fraud, and its penalty is denounced against the making of a deed with a fraudulent intent. The simple making of a second deed, whilst a former one is outstanding and in force, without reciting the same, does not constitute the offense, if there is no intention to defraud, and the deed does not have that effect. There must be a fraudulent intent designed to operate to the injury or detriment of some person."

Such intent to defraud may not be directed against the grantee but against some third person, to whom the grantor and grantee intend the latter shall sell the property as though unincumbered by the lien of which no mention is made. In such case both the grantor and the grantee would be guilty of an offense against the statute. Therefore defendants are right in their position that if the deed to Mrs. Hadley was not made in good faith but for a fraudulent purpose shared by her, of enabling her to sell the property as though unincumbered by the second deed of trust, the fact that she, as grantee was not the victim but a guilty participant in the fraud, would not preclude an innocent purchaser from her from invoking the statute against her guilty grantor.

It is manifest from all the evidence that there was no probable cause for the prosecution of plaintiff on

the charge that he intended to, or did, defraud Mrs. Hadley, his grantee. The fact being clearly established that she had full knowledge of the Hoblitzell deed of trust at the time the property was conveyed to her and that she accepted plaintiff's promise to pay and discharge that lien, she was not, and could not have been injured by the omission of any mention of that lien, and therefore was not, and could not have been the object of any intent to defraud on the part of plaintiff. The prosecution was on a charge which could not be successfully maintained and the prosecuting attorney was right in dismissing the case.

But it does not follow that such failure of the prosecution, of itself, would support plaintiff's action for malicious prosecution. "The discharge of the accused makes only a prima-facie case for him in an action for malicious prosecution and defendant still has the right to claim that he has probable cause." [Smith v. Glynn, supra; Eckerle v. Higgins, 159 Mo. App. 177; Smith v. Burrus, 106 Mo. l. c. 99.] Where probable cause for a criminal prosecution actually exists it is immaterial so far as the conduct of the accuser is concerned that some error in the proceeding caused the prosecution to fail. The accuser may be mulcted in damages as for a malicious prosecution only where it appears that he had no reasonable or probable cause to believe that the crime had been committed and was actuated solely by malice against the accused.

There are some facts and circumstances in evidence from which a jury might have inferred that plaintiff, in making the deed, was prompted by a fraudulent intent which was known to and participated in by his grantee. There is evidence tending to show that the Hadleys were in pecuniary straits at the time they bought the property and that they sold it to Ranger for less than they paid for it to procure money for living expenses. If, as counsel for defendants

argue "The only evidence of conspiracy in this case is that the Hadleys and Bowers were acting together for the purpose of defrauding defendants of their property," it goes without saying that defendants had probable cause for the prosecution, and having such cause, should not be punished in damages for the mere reason that the prosecution was based upon an erroneous charge.

But the difficulty of defendant's position lies in the fact that their evidence is contradicted in its essential features by the evidence of plaintiff which tends not only to show that the sale to Mrs. Hadley was in good faith, but that defendants purchased from her with full knowledge of all the facts relating to the title, including the fact that plaintiff had agreed to discharge the Hoblitzell lien, and then, in malice, born of the contentions which subsequently arose between them and plaintiff, attempted to turn an innocent omission from the recitals of the deed into a trap that would lay their antagonist by the heels.

It appears from the testimony of plaintiff that immediately after Mrs. Hadley sold the property to Ranger, the latter brought suit against plaintiff in a justice court to recover rent for the property for half a month, and that at the trial of the cause about ten days later, Hadley, in the presence of plaintiff, had a conversation with both defendants in which he charged them with having come to his home at night and with having intimidated his wife into selling the property to them for $275 less than its value, and that he demanded that they accept a tender of the purchase price and reconvey the property to her. This demand was refused and in the course of the conversation the statement was made by Ranger concerning the Hoblitzell mortgage: "Mrs. Hadley and I understand that proposition, and Mrs. Bowers . . . . We understood that at the time; that has been in part

paid but if Mr. Bowers don't pay it I will pay the rest."

The evidence of plaintiff, which we find no reason for pronouncing to be without substance, clearly shows that he was innocent of any attempt to defraud his grantee or any person who might purchase from her and that defendants, in fact, were not defrauded or misled, but that the facts establishing his innocence were known to them when they procured his arrest. Plaintiff has sustained his burden of proof and the opposing evidence of defendants on the issue of probable cause and malice can be accorded no greater effect than that of presenting issues of fact for the jury to solve. "The question of probable cause is composed of law and fact; it being the province of the jury to determine whether the circumstances alleged are true or not, and of the court to determine whether they amount to probable cause." [Hill v. Palm, 38 Mo. l. c. 22.]

Nor may defendants be excused from liability on the theory that in taking the advice of counsel and in stating the facts of the case to the prosecuting attorney, they acted in good faith and are exonerated in law from any imputation of malice. The rule as to the legal effect of the accuser seeking the advice of counsel is stated as follows in Sharpe v. Johnston, 76 Mo. l. c. 674: "The advice of counsel cannot accurately be said to amount to probable cause, in the face of the judgment of the magistrate discharging the prisoner. The discharge of the plaintiff by the committing magistrate was prima-facie evidence of a want of probable cause, although counsel may have advised that plaintiff was liable to a criminal charge; and although defendant may have communicated to counsel learned in the law, all the facts and circumstances bearing upon the guilt or innocence of the plaintiff, which they knew, or by reasonable diligence could have ascer-

tained, yet if, notwithstanding the advice of counsel, they believed that the prosecution must fail and they were actuated in commencing said prosecution not simply by angry passions or hostile feelings, but by a desire to injure and wrong the plaintiff, then most certainly they could not be said to have consulted counsel in good faith, and the jury would have been warranted in finding that the prosecution was malicious.'' [See also Smith v. Glynn, supra.]

Under the hypothesis of plaintiff's evidence, defendants, having knowledge of facts which clearly established the innocence of plaintiff, did not act in good faith on the advice of counsel, but in malice sought to do plaintiff irreparable injury by concealing material facts and in stating to the prosecuting attorneys only such facts as would tend to support their accusation against plaintiff. The jury were entitled to weigh the evidence of plaintiff and if they found it to be true, as they did, the defense of taking advice of counsel and of making disclosures of all material facts within their knowledge to the public prosecutor, being false, could not avail defendants.

There is nothing in the recent decision of the Supreme Court in Wilkinson v. McGee, 178 S. W. 471, out of harmony with what we have said. The well-recognized rule is there reaffirmed that the finding of an indictment by the grand jury against a person charged with crime is prima-facie evidence of probable cause, in an action for malicious prosecution ''but it is not conclusive and may be rebutted by proof that the indictment was obtained by false or fraudulent or other improper means.'' The prosecution in the present case was not under an indictment but followed a willful suppression and concealment of material facts. This case, as disclosed by the evidence of plaintiff affords a striking instance of a half truth constituting a falsehood. The demurrer to the evidence was properly overruled.

We have examined the instructions carefully and find no error in them prejudicial to defendants. The criticism of plaintiff's first instruction that it assumed plaintiff was discharged by the justice of the peace when there was no evidence of his being thus discharged is not well founded. It is conceded that the prosecuting attorney dismissed the prosecution and the justice must have discharged plaintiff from that action.

Nor is there any merit in the contention that the instructions allowed the jury ' ..ermine the law as to what does or does not constitute probable cause. The question of probable cause in this case embraced issues of fact which were properly defined in plaintiff's first instruction. The instructions of defendant which we have quoted took the same view of these issues.

Other criticisms of the instructions have been sufficiently answered in our discussion of the demurrer to the evidence. The point that the verdict is excessive must also be ruled against defendants. Considering the elements that enter into the damages in such cases, we cannot say that the assessment of $5000 for the false arrest, incarceration in jail and malicious prosecution of a practicing lawyer in good standing is unreasonable. The judgment is affirmed. All concur.